STATE, EX REL. ROGERS, *v.* BUSHONG, SUPT.

(No. 949—Decided October 27, 1947.)

*Mr. Francis W. Durbin,* for petitioner.

*Mr. Hugh S. Jenkins,* attorney general, *Mr. Roland Lee* and *Mr. M. E. Frase,* for respondent.

GUERNSEY, J. This is an action in *habeas corpus.*

In his petition filed in this court Truman Rogers avers that he is sane and is being unlawfully restrained of his liberty by the respondent, R. E. Bushong, superintendent of Lima State Hospital.

Omitting caption and signature, the return of the respondent to the writ of *habeas corpus* issued upon the petition herein, is in the words and figures following, to wit:

"R. E. Bushong, as superintendent of Lima State Hospital, hereby makes return of the writ of *habeas corpus* in this cause, and respectfully represents to the court that he has had Truman Rogers, petitioner herein, in his custody since January 24, 1947, by virtue of

a commitment of the Common Pleas Court of Mahoning county, to the Lima State Hospital, true copy of which is hereto attached and made a part hereof and marked Exhibit A.

"This return made this 23rd day of September, 1947."

The order of commitment referred to in the return and made a part thereof and marked Exhibit A, omitting the certificate of the Clerk of the Court of Common Pleas of Mahoning county, authenticating the order of commitment, is as follows:

"This day comes the prosecuting attorney on behalf of the state of Ohio, the defendant comes into court in custody of the sheriff, his counsel also coming, and trial to the court is resumed and the court having heard the remainder of the evidence and arguments of counsel this cause is submitted; upon consideration thereof the court find the defendant not guilty by reason of insanity and acquits defendant on that sole ground.

"It is therefore considered ordered and decreed by the court that the said defendant Truman Rogers be taken hence by the sheriff to the jail of Mahoning county and from there to the State Hospital for Criminal Insane at Lima, Ohio, there to be confined under G. C. 13441-3 and that he pay the costs of prosecution."

A certified copy of the docket and journal entries in criminal case No. 16807 in the Court of Common Pleas of Mahoning county, Ohio, shows that the petitioner, Truman Rogers, was, at the January term of that court in 1946, indicted by the grand jury of that county, and that in the indictment it is charged that Truman Rogers late of that county, on the 5th day of April, 1946, at that county did unlawfully and fraudulently, and without any lawful warrant or authority whatever, seize, take, steal, and kidnap, and him, Tru-

man Rogers, then and there unlawfully, forcibly, fraudulently and against her will, and without her consent, carry off Patricia Smith in his automobile at the point of a gun for the purpose of shielding and protecting himself and of preventing his apprehension while in the perpetration of committing a felony.

The certified copy further shows that Truman Rogers upon being arraigned on the indictment pleaded not guilty but subsequently, by leave of court, filed a plea of not guilty on the ground of insanity, and thereafter made written waiver of trial by jury and elected to be tried to the court; and that on trial to the court the court found Truman Rogers not guilty by reason of insanity and acquitted him on that sole ground. Truman Rogers was then committed to the State Hospital for the Criminal Insane at Lima, pursuant to Section 13441-3, General Code.

Section 13441-3, General Code, upon which the commitment is based, is as follows:

"When a defendant pleads 'not guilty by reason of insanity,' and is acquitted on the sole ground of his insanity, such fact shall be found by the jury in its verdict, and it shall be presumed that such insanity continues. In such case the court shall forthwith direct that the accused be confined in the Lima State Hospital, and shall forthwith commit him to such hospital, and such person shall not be released from confinement in such hospital unless and until the judge of the Court of Common Pleas of Allen county, Ohio, the superintendent of said Lima State Hospital and an alienist to be designated by said judge and said superintendent, or a majority of them, after notice and hearing, find and determine that said defendant's sanity has been restored, and that his release will not be dangerous; if said release be granted, it may be final, or on condition, or such person may be released

on parole; and thereafter, in the discretion of said judge or superintendent may be returned to said hospital. Notice of such hearing shall be given to the prosecuting attorney of Allen county, also to the prosecuting attorney of the county from which said defendant was committed; nothing in this section contained shall be held or construed to deprive such person of his constitutional privilege to the writ of *habeas corpus.*"

The provisions of the section mentioned are the only ones relating to the confinement and commitment in felony cases where the defendant pleads "not guilty by reason of insanity" and is acquitted on the sole ground of his insanity.

The case was submitted to the court upon the petition and return of the writ and the evidence.

The respondent, at the close of petitioner's case and again at the close of all the evidence, moved the court to dismiss the case for the stated reason that Section 13441-3, General Code, prescribes and gives to petitioner a remedy designed specifically to rule the case presented by petitioner, and consequently the writ of *habeas corpus* may not be invoked.

The court reserved its decision on that motion and heard the whole case subject to the decision it should thereafter render on the motion. The motion will therefore be first considered.

Based on the decisions of courts in states other than Ohio, the following rules relating to the legal questions raised by the motion to dismiss, are set forth in 25 American Jurisprudence, under the subject of *habeas corpus*, to wit:

"Where one in custody by reason of insanity is detained after he has recovered his sanity, such detention is illegal and may be ended by *habeas corpus*; and it is generally held that a person committed as

insane has the right to have his sanity determined on habeas corpus. In some states, the writ lies notwithstanding provision is made for a statutory proceeding whereby the sanity of one committed to an asylum may be determined.

\* \* \* \* \*

"In some jurisdictions, however, the existence of another adequate statutory remedy to obtain the release of one committed as criminally insane has been held to preclude the use of *habeas corpus* for this purpose, but such, of course, is not the rule in jurisdictions where such other remedy is not deemed exclusive." 25 American Jurisprudence, 209, *Habeas Corpus,* Section 85.

"The writ of *habeas corpus* may not be invoked by one who has a remedy given by a statute. designed specifically to rule the case presented by him.

\* \* \* \* \*

"In many instances, a specific statutory remedy provided for one who seeks to obtain the relief available under a writ of *habeas corpus* has been held to be exclusive, either in fact or by necessary implication, and to preclude a resort to *habeas corpus.* On the other hand, in several instances, the specific remedy provided by statute has been held to be cumulative, and not exclusive of a resort to *habeas corpus.*" 25 American Jurisprudence, 156, *Habeas Corpus,* Section 20.

In the case of *In re Remus,* 119 Ohio St., 166, 162 N. E., 740, it is, among other things, held:

"1. One who is acquitted of murder on the sole ground of insanity and who has been committed to the Lima State Hospital for the Insane, is not deprived from thereafter seeking a writ of *habeas corpus* for the purpose of showing that he is sane and therefore unlawfully restrained of his liberty.

"2. Section 1998, General Code (98 Ohio Laws, 240),

authorizing the superintendent of such institution to discharge such inmate who 'in his judgment' is recovered, etc., does not preclude the inmate from applying to a court of competent jurisdiction for a determination of his sanity,—to a tribunal which is empowered to use its process, and to hear sworn testimony upon that issue.''

From the opinion in the above case it appears that the holdings mentioned are based upon the followiug reasoning:

''While it may be readily conceded that the superintendent has a discretion in the exercise of his judgment in the release of an inmate, we do not agree that his judgment in that respect is either exclusive or final; nor do we concur in the view that an inmate of such hospital may not apply to a court that has original jurisdiction in *habeas corpus* for his release therefrom. Under the Constitution of this state, the Court of Appeals is given original jurisdiction in *habeas corpus* to determine whether one of its citizens is unlawfully restrained or deprived of his liberty. Surely this power has equal or larger scope than any that may be conferred upon the superintendent by legislative act. *Habeas corpus* supplies a method by which an inmate may have a judicial determination of his sanity or of his unlawful restraint. If unlawfully restrained, he may invoke the authority of a court of competent jurisdiction, by means of that writ, in order to secure his release. No legislation can circumvent or deny this jurisdiction of the court in *habeas corpus*, although legislation may provide for reasonable facilities for its judicial exercise. * * *

''That the liberties of its citizens might be safeguarded, this state, like many others, has adopted this constitutional provision:

'' 'The privilege of the writ of *habeas corpus* shall

not be suspended, unless, in cases of rebellion or invasion, the public safety require it.' Article I, Section 8.

*　　*　　*　　*　　*

"Were we to hold that the judgment of the superintendent of the Lima State Hospital upon the question of the inmate's sanity, or upon the lawfulness of his restraint, was final and exclusive, we would thereby deprive him of the right to appeal to a judicial tribunal for the determination of such question—a right guaranteed him by our Constitution and law. It would be an anomaly in our jurisprudence were we to hold that a judicial tribunal, upon which original jurisdiction in *habeas corpus* has been conferred by our Constitution and laws, was powerless to determine the sanity or insanity of an inmate of an institution for the insane, and to release him if he was in fact sane or had been restored to reason since his legal confinement, or to hold that such courts were prevented from decreeing his liberation because the judgment of the superintendent conflicted with the judgment of a court empowered to use its processes and to hear sworn testimony upon that vital issue."

Giving effect to the decision in the case of *In re Remus, supra,* and the reasoning upon which it is based, it is clear that under the laws of Ohio anyone who is acquitted of a felony on the sole ground of insanity and who has been committed to the Lima State Hospital for the Criminal Insane, is entitled to have the question of his sanity, or of the lawfulness of his restraint, determined by a judicial tribunal.

Section 1998, General Code, in effect at the time of the decision of *In re Remus, supra,* and referred to in the above quoted second paragraph of the syllabus of that case, authorized the superintendent of the Lima State Hospital to discharge an inmate "not under

sentence for crime, who, in his judgment, is recovered, or who has not recovered, but whose condition has improved to such extent that his discharge will not be detrimental to public welfare or injurious to him.''

The section mentioned has been repealed and the only section of the General Code now in effect containing any provision in any way similar to thé provisions of the repealed section, is Section 13441-3, General Code, hereinbefore quoted.

It will be noted that under the provisions of Section 13441-3, General Code, a person committed as prescribed in that section shall not be released from confinement in such hospital unless and until the judge of the Court of Common Pleas of Allen county, Ohio, the superintendent of Lima State Hospital, and an alienist to be designated by such judge and superintendent, or a majority of them, after notice and hearing, find and determine that the defendant's sanity has been restored and that his release will not be dangerous.

There being no provision to the contrary in that section, it would appear that a person so committed and held in that hospital might, if he desired, by proper application to the Common Pleas Court, avail himself of the provisions of that section, although it has been customary for only the superintendent of the hospital to make such application.

The tribunal, board or commission prescribed by that section to find or determine the question of whether defendant's sanity has been restored, and whether he should be released from that hospital, is not a judicial tribunal but simply an administrative board, as it, by the terms of the section, is composed of two persons who are not judges and whò, under the terms of the section, may make such finding or determination without the concurrence of the judge who is a member of such tribunal, board or commission.

As Section 13441-3, General Code, does not prescribe a judicial tribunal to make such finding and determination, and the petitioner, under the Constitution of this state, has the right to have such determination made by a judicial tribunal, the remedy prescribed in the section is not exclusive and the petitioner is not thereby precluded from resorting to his constitutional remedy of a writ of *habeas corpus*.

It will be noted also that under the provisions of that section the right to this remedy is expressly recognized as being available to persons committed pursuant to the provisions of that section.

For the reasons mentioned, the motion to dismiss the petition will be overruled.

We will therefore proceed to a consideration of the case on its merits.

We find from the evidence that the petitioner contracted syphilis in 1939, and for some time prior to his commitment to Lima State Hospital had indulged in the excessive consumption of alcohol, and when admitted to that hospital suffered from insanity which was diagnosed as such by psychiatrists who classified the same, as psychosis with syphilitic meningo encephalitis (general paralysis), with paranoid trend, and was diagnosed as such by other psychiatrists who classified the same as severe alcoholic psychosis, all of the psychiatrists finding that the petitioner, at the time, exhibited symptoms of amnesia, hallucinations and delusions.

Since petitioner's commitment, his mental condition has improved so that during about five months preceding the trial in this court his mind has been clear and he appears to be sane.

Syphilis of the character suffered by petitioner causes a deterioration of brain tissue which tends to

produce amnesia, hallucinations and delusions and other symptoms of insanity which are aggravated by the excessive use of alcohol.

The nature of petitioner's mental illness is such that he may, and probably will at any time, particularly if released from confinement and not restrained in the consumption of alcohol, have a recurrence of amnesia, hallucinations and delusions and other indicia of insanity from which he had heretofore suffered, and consequently it is impossible at this time to determine that he has now been restored to reason and is sane.

As it is impossible to make such determination, the petition of the petitioner will be denied and he will be remanded to the custody of the respondent to be confined by him pursuant to the commitment.

*Writ denied.*

JACKSON, P. J., and MIDDLETON, J., concur.